UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA </br></br> v. </br></br> OHM PHARMACY SERVICES, INC. </br></br> Defendant | Criminal No. </br></br> Violation: </br></br> Count One: Health Care Fraud </br> (18 U.S.C. § 1347) </br></br> Forfeiture Allegation: </br> (18 U.S.C. § 982(a)(7)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. The defendant, OHM PHARMACY SERVICES, INC. ("OHM"), was a Florida corporation with its principal place of business in Auburndale, Florida.

2. OHM operated a specialty pharmacy that dispensed high-cost treatments and dermatological products that are less commonly available at traditional retail pharmacies.

3. OHM employed several individuals who worked as prior authorization specialists ("PA Specialists"). Among other duties, PA Specialists worked on completing and submitting prior authorization requests for drugs that OHM dispensed.

4. Evzio was a prescription naloxone hydrochloride injection used to treat a person known or suspected to have had an opioid overdose. Evzio delivered a single dose of the drug naloxone via a voice-guided, hand-held auto-injector.

5. The Medicare program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.

Medicare was a "Federal health care program" as defined in 42 U.S.C. § 1320a-7b(f) and a "health care benefit program" as defined in 18 U.S.C. § 24(b). Individuals who received benefits under Medicare were commonly referred to as "beneficiaries."

6. Medicare was subdivided into multiple parts. Medicare Part D was an optional program that, for a monthly premium, provided coverage for the cost of prescription drugs. This coverage was provided by insurance companies and other private companies that Medicare approved.

7. In the prescription drug context, insurers would direct providers to seek prior authorization, a process which required the provider to submit additional clinical information justifying the prescription before insurers would agree to pay. Prior authorization forms commonly asked providers whether a patient to whom a drug had been prescribed was intolerant to (or had already tried but failed on) a less costly alternative therapy. Ordinarily, a physician or the physician's office completed a prior authorization request and sent it to the insurer with the physician's signature.

Scheme to Defraud

8. OHM dispensed Evzio during the period between on or around September 1, 2016 and on or around March 29, 2019.

9. Evzio was significantly more expensive than other prescription naloxone products with which it competed. Whereas Evzio's list price was $4,100 for a pack of two auto-injectors, the competing Narcan nasal spray generally was available for roughly $150 per two-pack, and generic naloxone was available for less than $12 per dose.

10. Pharmacies that dispensed Evzio could earn significant profit margins on Evzio—typically about $400 per Evzio pack.

11. OHM knew that many Medicare Part D plans would not authorize payment for Evzio without a prior authorization request.

12. OHM completed Evzio prior authorization forms in place of the prescribing physicians, including instances in which OHM staff signed the prior authorization forms without the physician's authorization. OHM then submitted the forms to insurers—including to Medicare Part D plans—as if OHM were the physician. On dozens of Evzio prior authorization request forms, OHM staff listed OHM's fax number in a field that requested the prescribing physician's fax number. In addition, OHM listed the name of an OHM employee in a field on the prior authorization forms that called for the prescribing physician's office contact. OHM did so to ensure that insurers would contact OHM—and not the listed prescribing physician—when communicating about the prior authorization request.

13. In addition to purporting to be the physician's office, OHM submitted Evzio prior authorization requests to insurers that contained false clinical information to secure approval of the prior authorization and payment for the more expensive drug. For example, OHM staff filled out and submitted dozens of Evzio prior authorization request forms that falsely asserted that patients had previously tried and failed both Narcan and naloxone. Furthermore, OHM staff falsely stated on Evzio prior authorization request forms that patients had shaky hands or nasal problems.

14. Insurers, including Medicare Part D plans, approved dozens of false Evzio prior authorization requests that OHM submitted. OHM understood that, had the insurers known that

the forms contained false information, they would not have authorized and paid for the prescriptions.

COUNT ONE
Health Care Fraud
(18 U.S.C. § 1347)

The United States Attorney charges:

15.     The United States Attorney re-alleges and incorporates by reference paragraphs 1-14 of this Information.

16.     Between in or around September 1, 2016 and March 29, 2019, the defendant,

OHM PHARMACY SERVICES, INC.,

did knowingly and willfully execute a scheme and artifice to defraud Medicare, a health care benefit program as defined in 18 U.S.C. § 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, in connection with the delivery of and payment for health care benefits, items, and services.

All in violation of Title 18, United States Code, Section 1347.

## FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(7))

17. Upon conviction of the offense in violation of Title 18, United States Code, Section 1347, set forth in Count One, the defendant,

OHM PHARMACY SERVICES, INC.,

shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the offense.

18. If any of the property described in Paragraph 17, above, as being forfeitable pursuant to 18 U.S.C. § 982(a)(7), as a result of any act or omission of the defendant --

   a. cannot be located upon the exercise of due diligence;

   b. has been transferred or sold to, or deposited with, a third party;

   c. has been placed beyond the jurisdiction of the Court;

   d. has been substantially diminished in value; or

   e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to 18 U.S.C. § 982(b), incorporating 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 17 above.

All pursuant to Title 18, United States Code, Section 982(a)(7).

                                LEAH B. FOLEY
                                UNITED STATES ATTORNEY

                                ABRAHAM GEORGE
                                Digitally signed by ABRAHAM GEORGE
                                Date: 2025.04.10 11:29:06 -04'00'

                                _____
                                ABRAHAM R. GEORGE
                                LAUREN A. GRABER
                                Mackenzie A. QUEENIN
                                Assistant United States Attorneys
                                District of Massachusetts

Date:  April 10, 2025